IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


UNITED STATES OF AMERICA

vs.                                              3:07cr105/MCR; 3:09cv289/MCR/MD
                                                 3:07cr132/MCR; 3:09cv290/MCR/MD

HOLLY M. BARNES

---

## REPORT AND RECOMMENDATION

This matter is before the court upon identical motions to vacate, set aside, or correct sentence pursuant to 28 U.S.C. §2255 filed in both of the above-styled cases (Case 3:07cr105, doc. 54 & 66; case 3:07cr132, doc. 35 & 45).  The government has filed a response (Case 3:07cr105, doc. 72, case 3:07cr132, doc. 50) and the defendant has filed a reply  (Case 3:07cr105, doc. 74, case 3:07cr132, doc. 53).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  Although defendant was clearly disappointed with the above-guidelines sentence she received in these cases, after a careful review of the record and the arguments presented, it is the opinion of the undersigned that defendant has not raised any issue requiring an evidentiary hearing, Rules Governing Section 2255 Cases 8(a) and (b), that there is no factual or legal basis for relief, and the motion should be denied.


## I.  BACKGROUND

Defendant Holly M. Barnes was charged on August 21, 2007  in case 3:07cr105 with 19 counts of filing false or fraudulent claims (counts 1-19), and 15 counts of

fraud with identification documents (counts 20-24). (Doc. 2). The indictment alleged that Barnes was a troop leader for Girl Scouts of America, leading two troops in Pea Ridge. She created a fraudulent "Girl Scout Medical Release" form in order to obtain personal history information from troop members which would enable her to file fraudulent income tax returns under the names of the children. She told the parents of the Girl Scouts that she needed the personal information, including social security numbers so the children could take field trips or in the event that medical treatment became necessary. Actually, she used the information to prepare and electronically file fraudulent income tax returns with the IRS, using false W-2 information. She also used the identities of her own minor children to prepare and file fraudulent income tax returns. Proceeds were electronically deposited into several bank accounts on which defendant had signature authority. Counts 1 through 19 corresponded to 19 different fraudulent returns the defendant filed with the IRS. Counts 20 through 34 alleged fifteen counts of using another person's identification with the intent to commit an unlawful activity that constitutes a violation of federal law. Defendant was represented by Thomas Keith from the office of the Federal Public Defender.

Defendant was charged via information in case 3:07cr132 with theft of government property valued in excess of $1,000. (Case 3:07cr132, doc. 1). A statement of facts signed the by defendant acknowledges that she removed items from the shelves of the Pensacola Navy Exchange and then returned them for refund without having purchased the items. She made 32 returns with no receipts totaling over $6,000.00. (*Id.* at doc. 8 at 1-2). At least two of the incidents were recorded on security video.

Defendant appeared before the district court on October 26, 2007 to enter a plea of guilty pursuant to a written plea and cooperation agreement in case 3:07cr105 and pursuant to the written statement of facts in case 3:07cr132 on

October 26, 2007. (Doc. 22, 23, 24, & 42).[1]   Defendant indicated her intent to waive her right to grand jury indictment in case 3:07cr132, and to enter a guilty plea to the charges in 3:07cr105 after consultation with counsel.  (Doc. 42 at 2-6).  During the court's questioning, defendant revealed that she had first been treated for depression in June or July of 2004, and that she had been prescribed an anti-depressant and anti-anxiety medication which she had taken almost continuously since then. (Doc. 42 at 10).  She noted that the dosage had been increased over the course of the past several years and still did not alleviate her symptoms entirely. She also noted that she took pain medication as needed, and told the court that although she thought it might have an effect on her ability to think clearly, it was not having that effect on that day because she was too nervous. (Doc. 42 at 11-12).  She affirmed that she had no doubt that she understood why she was in court that day. (Doc. 42 at 12).  She denied any hospitalizations related to mental health or any other mental health diagnosis besides the depression and anxiety. (Doc. 42 at 12-13). Defendant indicated that she understood the rights she would be waiving by entering a guilty plea and that she had discussed these rights with counsel. (Doc. 42 at 13-17).  The court verified the authenticity of defendant's signature on the plea documents as well as the fact that defendant had discussed her decision fully with counsel. (Doc. 42 at 17-19).  The court discussed the parameters of the penalties that defendant faced, informed her that the court was limited only by the statutory maximum in imposing sentence, and reiterated that there was no way to predict her sentence at that juncture, and if any predictions had been made, the defendant should not rely on those. (Doc. 42 at 19-23).  Proceedings were adjourned due to a family emergency of defense counsel, and were reconvened on October 31, 2007.

Defendant reaffirmed on October 31, 2007 that she had discussed the plea agreements in full with Mr. Keith before signing them. (Doc. 43 at 3-4).  She agreed

---

[1]The district court conducted the rearraignment and sentencing on both criminal cases at the same time.  Henceforth, references to the record will be to case 3:07cr105/MCR unless otherwise noted.

that she had done what the government said she did in the statement of facts, while reserving the quantity of the theft as an issue for sentencing.  (Doc. 43 at 6-7).  When the court asked counsel whether there was anything else that needed to be addressed with respect to case 3:07cr105, counsel stated that although it was not in the plea agreement and was not a promise, the Assistant United States Attorney had mentioned that he might move to remit the special monetary assessments to each count.  (Doc. 43 at 8).   AUSA Preisser clarified that the conversation was essentially that if the special monetary assessments interfered with the collection of restitution, such a motion might be made.  (Doc. 43 at 8-9).  Defendant reaffirmed that her mental health status had not changed since the previous proceeding, and that she had not taken any narcotic medication on that date.  (Doc. 43 at 9).  After the court went over the statement of facts and the charges in case 3:07cr132, the defendant admitted that she had done what the government said she had done.  (Doc. 43 at 10-11).  The defendant stated that she had fully discussed her decision to enter a plea with her attorney, that she felt comfortable proceeding based on the discussions she had with counsel, and that she had been satisfied with his representation of her.  (doc. 3 at 13-14).  The court found that defendant was alert and intelligent, had decided to enter the plea of her own free will after consulting with competent counsel with whom she had indicated she was well satisfied, and that the facts that the government was prepared to prove and that she had admitted were true were sufficient to support a guilty plea and a conviction on each of the charged offenses and accepted defendant's guilty plea.   (Doc. 43 at 15-16).

Her pre-trial release bond was revoked and she was remanded to the custody

of the U.S. Marshal due to her violation of her conditions of supervised release.[2] (Doc. 43 at 17-35)

A single PSR was prepared for both of defendant's criminal cases. With respect to case 3:07cr105, defendant's base offense level pursuant to § 2B1.1 was 6. (PSR ¶ 36). She received a ten level increase pursuant to § 2B1.1(b)(1)(F) due to the quantity of intended loss. (PSR ¶37). She was initially assessed an additional two level adjustment pursuant to § 2B1.1(b)(8)(A), but this was omitted after objection by defense counsel, as the offense conduct had been undertaken for her own personal gain, not on behalf of an organization. (PSR §§ 38, 123-124). She received a two-level victim related adjustment pursuant to § 3A1.1(b). (PSR ¶ 39).

Her base offense level for case 3:07cr132 was also 6. She received a two level increase due to the amount of loss. § 2B1.1(b)(1)(B) for an adjusted offense level of 8. (PSR ¶¶ 44, 49).

Defendant's combined offense level pursuant to § 3D1.4 was 18, and because she failed to accept personal responsibility for her involvement in the offenses she did not receive the benefit of an acceptance of responsibility adjustment and her total offense level was also 18. (PSR ¶¶ 50-59). She had a criminal history category of 1. (PSR ¶ 64). The applicable advisory guidelines range was 27 to 33 months.

Defendant objected to the amount of restitution, and the figure was amended by the probation office to reflect an updated amount provided by the IRS. (PSR ¶¶ 119-120). She objected to the total loss amount reflected in the offense conduct, although it did not affect the base offense level. (PRS ¶¶ 121-122). She objected to the specific offense characteristic noted above and an amendment was made, and

---

[2]Specifically, despite a court order to the contrary stating that she could not work or volunteer in any position with children, other than her own, in which she would have access to personal information. On the same date that this condition was ordered, defendant showed up at the practice for a youth soccer team that she had been coaching and advised that she would take over the practice. (PSR ¶ 3). Just days before she was scheduled for a change of plea hearing, on October 24, 2007, the defendant attempted to open an account at Gulf Winds Credit Union for a minor child with a U.S. Treasury check in the amount of $2,086.15. (PSR ¶¶ 6 & 19).

she objected to classifying the children whose identities had been stolen as "victims" or "vulnerable victims." (PSR ¶¶ 125-128). She also objected to the failure to grant her the acceptance of responsibility adjustment. (PSR ¶¶ 129-130).

At sentencing, the court overruled the objection to the vulnerable victim adjustment (doc. 44 at 3-15), and to the denial of the acceptance of responsibility adjustment. (Doc. 44 at 15-22). The district judge unequivocally stated that "[it had] yet to see on [its] time on the bench a defendant less deserving of this credit." (Doc. 44 at 22). The restitution figure was calculated at $5,720.71 to the Navy Exchange and $87,976.70 to the IRS. (Doc. 44 at 23). Defendant's counsel urged the court to consider a departure or variance under guidelines policy statement 5H1.6, pertaining to Family Ties and Responsibilities. He called the defendant's husband to testify about the family's economic and emotional situation as a result of defendant's conviction. The defendant read a statement she had written about how incarceration would affect her family. (Doc. 44 at 23-35). Mr. Preisser read letters from the mothers of three children whose identities had been stolen about the impact of the crimes on the children and families. (Doc. 44 at 35-41). Defense counsel again requested the court consider a sentence below the applicable guidelines range, but the court denied the request. (Doc. 44 at 42-44).

The court discussed the factors listed in 18 U.S.C. § 3553(a) and noted that there were factors unique to the defendant's offense that were not taken into account by the guidelines including the number of victims, the repetitive nature of defendant's scheme and the extensive planning it involved, her role in a position of authority with the Girl Scouts of America, the fact that the harm to the victims of identity theft might not be known or felt for years, the fact that some additional acts of fraud had not been prosecuted, and the fact that she continued her pattern of unlawful conduct while she had knowledge that the investigation into the fraudulent tax return scheme was ongoing. (Doc. 44 at 44-49). The court noted its responsibility to punish the defendant for her conduct, deter others from similar conduct and of paramount concern, to protect the public from future criminal acts

of the defendant. (Doc. 44 at 49-50). It found that the guidelines were insufficient and did not take into account all the factors the court identified, and imposed an above-guidelines sentence of 120 months. This was a term of 60 months imprisonment in case 3:07cr105 on counts 1-19 to be served concurrently with a 120 month sentence in counts 20-34 and concurrently with the 120 month sentence she received in case 3:07cr132. (Doc. 44 at 52). She was ordered to pay restitution in the amount of $87,976.70 to the IRS and $5720.71 to the Navy Exchange. The special monetary assessment of $3,500 was remitted on motion of the government. (Doc. 44 at 42, 53).

Defense counsel objected to both the fact of the departure and the extent of the departure both because there was no prior notice that the court was considering such an upward variance or departure, and because it was much greater than necessary to meet all the goals of sentencing in § 3553(a). Counsel also objected to the court's speculation about uncharged criminal conduct or possible future harm to the victims, and insufficient weight afforded to defendant's plea, her family situation and the lack of previous criminal conduct. (Doc. 44 at 55-57).

She appealed, represented by appointed counsel Chet Kaufman of the office of the Federal Public Defender. She contested the district court's sentencing procedures and the substantive reasonableness of the 120 month sentence given that the Guidelines range was 27-33 months imprisonment. (Doc. 53).

Her first argument was that the sentence was procedurally unreasonable because she was not provided any notice that the district court would consider an upward departure despite the requirements of Fed.R.Crim.P. 32(h) and the Due Process Clause of the Fifth Amendment. The Eleventh Circuit found that the upward variance from the advisory guidelines range in defendant's sentence was not subject to the due process protections of Rule 32(h) post *Booker* and held there was no error. (Doc. 53 at 3).

Defendant next argued that her sentence was procedurally and substantively unreasonable. The Eleventh Circuit disagreed. It found that the defendant's

sentence was well below the statutory maximum, and that the severity of her crimes, her "compulsive criminal conduct  up until the plea hearing," and her failure to abide by the terms of her release all supported the district court's determination that the sentence it imposed was necessary to protect the public from future criminal conduct by the defendant, to deter others and to communicate the seriousness of defendant's crimes.  (Doc. 53 at 6).

In the present motion, defendant raises multiple grounds for relief, several of which overlap.  She contends that the plea agreement was "faulty," that the court failed to determine her mental fitness to enter a plea, that her sentence was miscalculated based on uncharged conduct, that counsel failed to make argument with respect to her sentence or present other evidence regarding defendant's mental state that would have shed light on her case, that her sentence was disproportionate to that of other individuals with the same crime and criminal history level, and that her sentence and restitution were improperly calculated.  The government asserts that defendant's claims are either procedurally barred or without merit.

## LEGAL ANALYSIS

### A.  General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.  A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law or (4) is otherwise subject to collateral attack.  28 U.S.C. § 2255; *Thomas v. Crosby,* 371 F.3d 782, 811 (11th Cir. 2004); *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999).  "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225,

1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2678, 2649, 91 L. Ed. 2d 397 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent. . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal. *Thomas v. United States,* 572 F.3d 1300, 1304 (11th Cir. 2009); *United States v. Nyhuis,* 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36 F.3d 1052, 1056 (11th Cir. 1994), *cert. denied*, 514 U.S. 1112, 115 S.Ct. 1966, 131 L.Ed.2d 856 (1995); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981); *Hidalgo v. United States*, 138 Fed.Appx. 290 (11th Cir. 2005). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16, 83 S.Ct. 1068, 1077, 10 L.Ed.2d 148 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Furthermore, a motion to vacate under section 2255 is not a substitute for direct appeal, and issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. *Lynn v. United States,* 365 F.3d 1225, 1234-35 (11th Cir. 2004); *Bousley v. United States,* 523 U.S. 614, 118 S.Ct. 1604, 1610, 140 L.Ed.2d 828 (1998); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (recognizing that a ground is "available" on direct appeal when "its merits can be reviewed without further factual development"); *United States v. Frady*, 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless

the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn,* 365 F.3d at 1234; *Bousley,* 118 S.Ct. at 1611 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000).

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States,* 538 U.S. 500, 503, 123 S.Ct. 1690, 1693, 155 L.Ed.2d 714 (2003); see also United States v. Patterson, 595 F.3d 1324 (11th Cir. 2010); *United States v. Bender*, 290 F.3d 1279, 1284 (11th Cir. 2002); *United States v. Jiminez*, 983 F.2d 1020, 1022, n. 1 (11th Cir. 1993). The benchmark for judging a claim of ineffective assistance of counsel is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). To show a violation of his constitutional right to counsel, defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy. *Id.*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d (1984); *Williams v. Taylor*, 529 U.S. 362, 390, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); *Gaskin v. Secretary, Dept. of Corrections,* 494 F.3d 997, 1002 (11th Cir. 2007). "*Strickland's* two-part test also applies where a prisoner contends ineffective assistance led him or her to enter an improvident guilty plea." *Yordan v. Dugger,* 909 F.2d 474, 477 (11th Cir. 1990) (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)); *United States v. Pease*, 240 F.3d 938, 941 (11th Cir. 2001). In applying *Strickland*, the court may dispose of an ineffective

assistance claim if defendant fails to carry his burden on either of the two prongs. 466 U.S. at 697, 104 S.Ct. at 2069.

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688, 104 S.Ct. at 2065; *see also Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007); *Atkins v. Singletary*, 965 F.2d 952 (11th Cir. 1992). "[R]eviewing courts must indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990) (citing *Harich v. Dugger*, 844 F.2d 1464, 1469 (11th Cir. 1988); *Dingle v. Secretary for Dept. of Corrections,* 480 F.3d 1092, 1099 (11th Cir. 2007); *Chandler v. United States,* 218 F.3d 1305, 1314 (11th Cir. 2000); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation")). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States,* 518 F.3d 1291, 1301 (11th Cir. 2008); *United States v. Freixas*, 332 F.3d 1314, 1319-1320 (11th Cir. 2003); (quoting *Brownlee v. Haley*, 306 F.3d 1043, 1059 (11th Cir. 2002)(quoting *Strickland*, 466 U.S. at 687, 689-90, 104 S.Ct. at 2064-66 and *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc)). When examining the performance of an experienced trial counsel, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d at 1316 n. 18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's

error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687). Or in the case of alleged sentencing errors, defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. *Glover v. United States*, 531 U.S. 198, 203-04, 121 S.Ct. 696, 700-01, 148 L.Ed.2d 604 (2001). A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance." *Id.*

To establish ineffective assistance, defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir.), *cert. denied*, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *Wilson v. United States,* 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899 (11th Cir. 1990) (citing *Blackledge*, 431 U.S. at 74, 97 S.Ct. at 1629); *United States v. Ross*, 147 Fed.Appx. 936, 939 (11th Cir. 2005).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. *Dingle,* 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'" *Dingle*, 480 F.3d

at 1099 (quoting *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

Although section 2255 mandates that the court conduct an evidentiary hearing "unless the motion and files and records conclusively show that the prisoner is entitled to no relief," a defendant must support his allegations with at least a proffer of some credible supporting evidence. *See Chandler v. McDonough,* 471 F.3d 1360 (11th Cir. 2006) (citing *Drew v. Dept. of Corrections,* 297 F.3d 1278, 1293 (11th Cir. 2002) (referring to "our clear precedent establishing that such allegations are not enough to warrant an evidentiary hearing in the absence of any specific factual proffer or evidentiary support"); *Hill v. Moore,* 175 F.3d 915, 922 (11th Cir. 1999) ("To be entitled to an evidentiary hearing on this matter [an ineffective assistance of counsel claim], petitioner must proffer evidence that, if true, would entitle him to relief."); *Ferguson v. United States*, 699 F.2d 1071, 1072 (11th Cir. 1983). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *Peoples v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991); *Holmes v. United States*, 876 F.2d 1545, 1553 (11th Cir. 1989) (citations omitted). Likewise, affidavits that amount to nothing more than conclusory allegations do not warrant a hearing. *Lynn*, 365 F.3d at 1239.

## B. Defendant's specific claims for relief

### Ground One--"Faulty Plea Agreement"

Defendant asserts that she "agreed to certain counts in the plea agreement, but she [was] sentenced based on a count that was dismissed." (Doc. 45 at 4). There is no factual basis for this claim. None of the counts of either the indictment or information were dismissed.

Defendant appears to suggest in her reply brief that the plea agreement was somehow faulty or invalid because she did not understand the potential penalties she faced and that she expected to receive a sentence of 3 ½ to 4 years.  Her claim is defeated by the transcript of the plea colloquy which sets forth that the court clearly explained the possible sentence defendant could receive.  It told defendant that she faced a maximum sentence of up to five years on each of the first 19 counts and a maximum of 15 years incarceration on the remaining counts, and defendant indicated that she understood. (Doc. 42 at 19-20). The court stated that it was limited only by the statutory maximum in imposing sentence, and specifically informed defendant that the sentences she received on each count could be consecutive sentences under the law.  (Doc. 42 at 21).  The court reiterated that there was no way to predict defendant's sentence at that juncture, and if any predictions had been made, the defendant should not rely on those.  (Doc. 42 at 21-23).  Again, defendant indicated that she understood, although she now makes a contrary assertion.  It has been long established that a defendant's statements during a Rule 11 colloquy as well as any findings made by the judge accepting the pleas constitute a formidable barrier in any subsequent collateral proceedings.  *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S.Ct. 1621, 1629, 52 L.Ed.2d 136 (1977); cf. *Holmes v. United States*, 876 F.2d 1545, 1550 (11th Cir. 1989) (trial court satisfied itself during Rule 11 colloquy of voluntary and understanding nature of plea).  Solemn declarations made under oath in open court carry a strong presumption of verity.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629*; United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).  They are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise; the subsequent presentation of conclusory and contradictory allegations does not suffice.  *Blackledge,* 431 U.S. at 73-74, 97 S.Ct. at 1629;  *United States v. Butt*, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion....include credible, valid reasons why a departure

from those earlier contradictory statements is now justified."). Defendant is not entitled to relief on this ground.

### Ground Two--Miscalculation of Sentence

Defendant again contends that she was sentenced based on information which had been dismissed. Actually her argument does not appear directed to "dismissed" counts or "information," but disagreement with the manner in which she was sentenced after calculation of the applicable guidelines range.

Her claim contains three parts. First, defendant asserts that the vulnerable victim adjustment should not have been applied to her as the IRS was the only victim in the case. The children, she asserts, suffered only collateral consequences of her conduct.

Second, she indicates that the court's statement that the repetitive nature of the crimes was not taken into account by the guidelines was erroneous, and notes that the sentencing guidelines have a provision for repetitive acts of fraud. She further states that if the court found the guidelines calculations to be incorrect, it should have made the correction in open court.

Finally, the defendant asserts that as grounds for its upward departure, the court incorrectly considered several things that were already taken into account by the guidelines. The court mentioned alleged additional acts of fraud for which she was not prosecuted. Defendant asserts that these additional acts of fraud the court spoke of were calculated in her offense level and into the intended loss amount. Likewise, defendant maintains that the court improperly considered the worthless checks that defendant wrote, because these were taken into account as part of her criminal history. Finally, the reference to the theft at the Navy Exchange was improper as this was part of the guidelines calculation as well, and defendant argues should not be penalized for the manner in which guidelines calculate particular offenses.

Defendant's claims are procedurally barred.  The Eleventh Circuit considered the reasonableness of her above-guidelines sentence and found no abuse of discretion in the district court's imposition of that sentence. Furthermore, an allegation of misapplication of sentencing guidelines raises neither constitutional, jurisdictional, or fundamental error which would result in a complete miscarriage of justice. *See Burke v. United States*, 152 F.3d 1329, 1331-32 (11th Cir. 1998) (citing cases); *United States v. Perez*, 952 F.2d 908, 910 (5th Cir. 1992).  Therefore, because of the narrow parameters of section 2255 review, and due to an available avenue of review through direct appeal, sentences imposed within statutory limits are generally insulated from section 2255 review.  *United States v. Frady*, 456 U.S. 152, 167-68, 102 S.Ct. 1584, 71 L.Ed.2d 816, 830 (1982); *Montemoino v. United States*, 68 F.3d 416, 417 (11th Cir. 1995); *Fernandez v. United States*, 941 F.2d 1488, 1494 (11th Cir. 1991).

### Ground Three--Counsel's Failure to Present Evidence; Denial of counsel of choice

Defendant states that her attorney failed to inform the court of the situation at home, "failed to supply the court with all the necessary evidence," "failed to argue on [defendant's] behalf" such that "issues which are of a concern to [her] were never presented to the court."  As explained above, the circumstances surrounding the defendant's family situation were presented to the court through the testimony of defendant's husband, and a videotape of defendant's children.  Defendant does not explain precisely what evidence or issues should have been presented.  Her conclusory assertions do not entitle her to relief.

Defendant next contends that before sentencing she wrote a letter to the Public Defender's office requesting another attorney.  Defendant's suggestion that she was entitled to the attorney of her choice is misguided. Although the Sixth Amendment guarantees competent, conflict-free counsel, it does not grant defendants the unqualified right to counsel of their choice.  See *United States v.*

*Gonzalez-Lopez,* 548 U.S. 140, 147-152, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006) ("the right to counsel of choice does not extend to defendants who require counsel to be appointed for them."); see also *Morris v. Slappy*, 461 U.S. 1, 103 S.Ct. 1610 (1983); *United States v. Garey*, 540 F.3d 1253,1263 (11th Cir. 2008); *Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985). Thus, her vague dissatisfaction with her experienced Assistant Federal Public Defender, Thomas Keith, was not a violation of her constitutional rights.

### Grounds Four and Five–Failure to Present Mental Health Evidence

Defendant's fourth and fifth grounds for relief relate to her mental health. She contends that the trial court failed to make an adequate determination of whether she was mentally able to withstand all the "duress and coercion" she was confronted with at the plea and sentencing hearing (doc. 35 at 6) and that counsel was constitutionally ineffective because he failed to present evidence that would have shed light on her mental health. Defendant asserts that counsel had evidence from her medical records and from a pre-sentencing psychological evaluation that would have shed light on her mental state at the time of the offense conduct. She notes that she had suffered a mild head injury from a car accident in February of 1996 which caused a "personality change," and that she was medically discharged from the Army as a result. She claims to suffer from short term memory loss, major recurrent depression, post-traumatic stress disorder, and personality disorder. She also asserts that she has suffered from seventeen years of abuse at the hands of her husband, including threats by her husband that he would hurt or kill her or her children. She claims that her husband coerced her into committing the crimes at issue to help his support his drug addiction, and when she initially refused, he physically threatened her.

Defense counsel states in his affidavit that he talked with the defendant about her automobile injury in 1996 and her taking the drug Prozac since 2004, which she believed had changed her personality and contributed greatly to her offense

conduct. (Doc. 71, exh. 1 at 2). Counsel obtained medical and psychological records, reviewed them and researched the possibility of a "Prozac defense." After doing so, he informed his client that in his opinion there was no viable mental health defense to the charges, but that her mental health issues could possibly mitigate her sentence. (*Id.*)

Counsel states that he had no doubt that defendant was competent to enter her plea, but he did have her examined prior to sentencing by psychologist Dr. James Larson for an evaluation of her mental health issues with respect to this case. Dr. Larson phoned defense counsel shortly before sentencing to render his opinion that there were no mental health issues that would be mitigating for sentencing. In fact, counsel notes that Dr. Larson's report was "unfavorable to Ms. Barnes," and consequently he did not provide it to the court, although he provided a copy to his client. (Doc. 71, exh. 1 at 3). He indicated in his affidavit that he was willing to provide a copy of the report to the court if his client requested that he do so. In defendant's reply to the government's response, defendant cited abundant case law where counsel was considered constitutionally ineffective for failing to present evidence regarding a defendant's background, mental health and substance abuse issues. However, she neither addressed the issue of Dr. Larson's unfavorable report nor provided a copy to the court of her own accord, and this report is therefore not before the court for its consideration. Her assertions that there was favorable mental health evidence that should have been presented to the court are therefore unsupported.

Furthermore, defense counsel asserts in his affidavit that it was only after her sentencing that defendant began to claim for the first time that her husband had something to do with her crimes. (Doc. 71, exh. 1 at 2). Defendant does not contradict or address this statement in her reply, but suggests that counsel should have recognized "signs, signals or statements" that she exhibited as a victim of abuse. (Doc. 53 at 14). Defendant has provided two items of what she considers to be relevant evidence: medical progress notes from a single June, 2004 consult with

RNP Mary D. Surrett[3] for defendant's depression (doc. 45, exh. C) and a police report written after a June, 2004 dispatch to the defendant's home regarding a family disturbance after which the officer concluded that no threats or acts of violence had occurred. (Doc. 53, exh. C). These items have little or no probative value with respect to providing an explanation or motive for defendant's criminal conduct that began in 2006. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. If defendant failed to bring the fact of her husband's alleged role in her criminal conduct to counsel's attention, she cannot now claim counsel is constitutionally ineffective for his failure to divine something that his client did not mention.

Defendant claims that she was suffering from Battered Woman's Syndrome as a result of her husband's behavior towards her during her marriage.[4] It is not clear whether she believes this was a complete defense to her actions, or whether she merely believes the evidence should have been presented in mitigation at sentencing. Typically, the admissibility or relevance of evidence concerning Battered Woman's Syndrome is at issue in cases in which defendants seek to use the syndrome to support a claim of self-defense or explain acts of violence against an alleged batterer,[5] or less frequently to explain the victim's joint participation in

---

[3]The notes are marked only "Progress Notes" and contain a notation that they were printed at Joint Ambulatory Care Center. It is not clear at what sort of facility the defendant sought treatment, but she is referred to as "Vet" ("veteran") throughout.

[4]Battered woman syndrome is a set of psychological and behavioral reactions exhibited by victims of severe, long-term, domestic physical and emotional abuse. *See United States v. Johnson*, 956 F.2d 894, 899 (9th Cir. 1992 (citing L. Walker, The Battered Woman Syndrome (1984)). It is not a mental disease or defect; rather, it is a post-traumatic stress disorder. *Id.* Battered Woman's Syndrome is often characterized by learned helplessness which keeps the battered woman from leaving the batterer. *Id.* This syndrome is sometimes referred to as Battered Spouse Syndrome. See Fla.R.Crim.P. 3.201. Neither label is all encompassing, as the syndrome is not limited to marital relationships with men as the batterers. The court will use Battered Woman's Syndrome herein.

[5]*See, e.g, Moran v. Ohio*, 469 U,.S. 948, 950 n. 2, 105 S.Ct. 350, 83 L.Ed.2d 285 (1984); *Middleton v. McNeil*, 541 U.S. 433, 124 S.Ct. 1830, 158 L.Ed.2d 701 (2004); *Sedlak v. Sessions,* 249 Fed.Appx. 787 (11th Cir. 2007); *Pike v. Guarino*, 492 F.3d 61 (1st Cir. 2007); *Saiz v. Ortiz*, 392 F.3d 1166 (10th Cir. 2004)*;*

unlawful conduct.[6]  Defendant's case is thus unusual in that she acted alone, rather than jointly with the alleged batterer.  Also, although she claims that she engaged in some portion of the offense conduct due to her husband placing a gun to her head and demanding money to support his drug habit, filing fraudulent tax returns could not have provided the immediate financial gain necessary to support a drug habit. In any event, the court finds that counsel was not constitutionally ineffective for failing to argue something about which he was not made aware.

Defendant also notes that her now 11 year old son suffers from Attention Deficit Hyperactivity Disorder and that there have been problems between him and her husband. She appears to suggest that her vital role in her son's life should have made her eligible for a lesser sentence.  Defendant states that her children have been placed under the jurisdiction of the Florida Department of Children and Families, and her son is currently residing in a foster home, rather than with family members.

The collateral effect of a defendant's incarceration on the defendant's children and other family members is well known to the court.  In fact, it is common for defendants facing sentencing to plead for leniency based on family circumstances.  The plight of the innocent collateral victims of a defendant's criminal conduct is truly unfortunate. Frequently, however, pre-sentencing pleas for leniency are met with admonitions that a defendant should have considered the effect his or her offense conduct would have on family members before choosing to engage in unlawful activity, rather than after getting caught.  In fact, section 5H1.6 of the sentencing guidelines provides that family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted

---

*Reay v. Scribner*, 2008 WL 1626000 (E.D. Cal. 2008); *Slater v. McNeil*, 2008 WL 1925089 (M.D.Fla. 2008).

[6]See e.g., *United States v. Word,* 129 F.3d 1209 (11th Cir. 1997) (fraudulent securities scheme); *Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006) (robbery); *Daniels v. Henry*, 2007 WL 424441 (N.D. Cal. 2007), aff'd 281 Fed.Appx. 663 (9th Cir. 2008)  (defendant and alleged batterer charged with homicide of one child and felony child endangerment of a second).

Nonetheless, the record reflects that at sentencing defense counsel argued for leniency based on defendant's "extraordinary family responsibilities." He presented the testimony of defendant's husband and a videotape of the children talking about how much they needed their mother at home, but did not call defendant's mother as a witness after defendant's husband had testified and done well in explaining the hardships the family would face. The fact that the court did not accept counsel's argument does not mean he was constitutionally ineffective in its presentation.

Ground Six--Sentencing Disparity

Defendant cites several cases as evidence that she was the victim of unlawful sentencing disparity. This claim is procedurally barred as it could have been raised on direct appeal. *Thomas,* 572 F.3d at 1304; *Nyhuis,* 211 F.3d at 1343. It is also without merit.

Title 18 U.S.C. § 3553(a)(6) provides that in imposing sentence the court shall consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6); *United States v. Docampo*, 573 F.3d 1091, 1102 (11th Cir. 2009). This issue typical arises in cases with multiple co-defendants, or cases where some co-conspirators are charged in state rather than federal court. See *Docampo,* 573 F.3d 1091; *United States v. Castaing-Sosa,* 530 F.3d 1358 (11th Cir. 2008); *United States v. Requeiro,* 240 F.3d 1321 (11th Cir. 2001); *United States v. Willis*, 139 F.3d 811, 812 (11th Cir. 1998) (collecting cases); see also *United States v. Perry*, 332 Fed.Appx. 595, 2009 WL 1668598 (11th Cir. 2009). The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in light of ... [the] record and the factors in section 3553(a)." *Docampo,* 573 F.3d at 1103, quoting *United States v. Talley*, 431 F.3d 784, 788 (11th Cir. 2005)). The *Docampo* court found that the defendant had failed to argue or establish that his sentence was unreasonable based on any factor other than the sentencing disparity and thus concluded that the

sentence was reasonable.  *Id.*; see also *United States v. Rolle*, 183 Fed.Appx. 911, 2006 WL 1582189 (11th Cir. 2006) (noting that sentencing disparity is only one of the § 3553 factors)  The dissent noted that the district court had made only a passing mention that it had considered the 28 U.S.C. § 3553(a) factors and opined that this was provided an insufficient basis for appellate review and procedurally unreasonable.  *Docampo*, 575 F. 3d at 1103 (Barkett, J, dissenting).  In the case at bar, the district court engaged in a lengthy explanation of the rationale underlying the departure it made.

Furthermore, while defendant has made an effort to find what she considers to be similar cases, the cases she cites came before different judges, and/or are unrelated and factually distinguishable from her case.  As The Eleventh Circuit stated in *McCleskey v. Kemp*, 753 F.2d 877, 894 (11th Cir. 1985), "not only will no two defendants be seen identical by the sentencers, but no two sentencers will see a single case precisely the same."  *McCleskey*, 753 F.2d at 894 (discussing race in the context of sentencing capital cases).   For instance, defendant calls the court's attention to *United States v. Lyle*, 239 Fed. Appx. 529 (11th Cir. 2007), in which the defendant pleaded guilty to making false claims against the United States and fraudulently using other persons' identification to make false claims against the United States. She had  a criminal history category of I, an offense level of 19 and a recommended guidelines range of 30-37 month, and she was sentenced at the bottom of the guideline range to a term of 30 moths.  However, Lyle's crime did not involve stealing the personal information of children and there was no evidence of continued criminal activity post-indictment.

Defendant also cites *United States v. Simpson*, 283 Fed.Appx. 747 (11th Cir. 2008), noting that the defendant in that case filed more than sixteen false returns and continued his behavior after indictment but received a 41 month sentence, which was at the low end of the guideline range.  However, Simpson only pleaded guilty to four counts–the others apparently were not charged.  Additionally, adult individuals on whose behalf defendant  Simpson filed many of the false returns had given him

their personal information in order for him to file returns for them, but they were unaware that he was falsifying information. Finally, Simpson apologized to the court and accepted responsibility at sentencing, and thus received the benefit of an acceptance of responsibility reduction.

In *United States v. Shough*, 239 Fed.Appx. 745 (3rd Cir. 2007), the defendant had used one person's identify for twenty years, and received a sentence of 78 months, at the high end of the applicable guidelines range. While defendant asks, rhetorically, what makes her crime any more heinous than this (doc. 53 at 6), clearly the two situations are not comparable.

In *United States v. Dinnall*, 313 Fed.Appx. 241 (11th Cir. 2009), defendant was sentenced to a 51 month sentence at the low end of the guidelines range after a conviction for fraud. However, the defendant's intended loss of $800,000 as opposed to the actual loss of $8,100 had been used to calculate loss, which had already resulted in an upward guidelines adjustment.

Finally she mentions the case of United States v. Deborah Adams (N.D.Fla. Case 3:08cr2/MCR). Adams was a Navarre woman convicted of filing false tax returns and identity theft. Seven months after defendant was sentenced, Judge Casey Rodgers sentenced Adams to a term of 60 months imprisonment (near the top of the applicable guidelines range) and ordered to pay restitution in the amount of $64,802.47. (N.D.Fla. Case 3:08cr2/MCR, doc. 37). Adams' case involved repetitive behavior but did not involve stealing the identities of children, and the court has found no evidence from the docket sheet in Adams' case that her conduct continued post-indictment.

Thus, defendant has failed to show that her sentence was disparate to that of other similarly situated defendants or that counsel was ineffective for failing to raise this argument on appeal.

### Ground Seven--Restitution

Defendant contends that the restitution amount owed to the IRS was less than the amount used to enhance her sentence, and that the restitution includes a count that was not included in the plea agreement. Defendant's claims regarding her restitution are both procedurally barred and without merit.

With respect to the difference between the amount of restitution owed versus the amount used to enhance her sentence, as noted above, it is appropriate for the court to use either the actual loss or the intended loss, whichever is greater. See *United States v. Dinnall*, 313 Fed.Appx. 241, 244-245 (11th Cir. 2009); U.S.S.G. 2B1.1 cmt. n.3(A)and 3(A)(i) and (ii). Furthermore, counsel notes in his affidavit that he reviewed the restitution amount and concluded that it was accurate. (Doc. 71, exh. 1 at 3). Again, defendant is factually mistaken with respect to her claim that any portion of her sentence improperly included a count that had been dropped, as the government did not dismiss any counts. Thus, she is not entitled to relief.

## C. Certificate of Appealability

As amended effective December 1, 2009, § 2255 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. § 2255 11(b).

After review of the record, the court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S.Ct. 1595, 1603-04, 146 L.Ed.2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that

party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully RECOMMENDED:

1. That the motion to vacate, set aside, or correct sentence (doc. 35) be DENIED.

2. That a certificate of appealability be denied.

At Pensacola, Florida, this 22nd day of April, 2010.

/s/ *Miles Davis*

MILES DAVIS
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon all other parties.  Failure to object may limit the scope of appellate review of factual findings. See 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).